IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| EDGE BUILDING PRODUCTS, INC., | * | Chapter 11 |
|     Debtor | * | |
| | * | Case No.: 1-05-bk-04415MDF |
| EDGE BUILDING PRODUCTS, INC., | * | |
|     Movant | * | |
| | * | |
| v. | * | |
| | * | |
| OFFICE OF THE UNITED STATES | * | |
| TRUSTEE, | * | |
|     Objectant | * | |

## OPINION

### Procedural and Factual History

Before the Court is the motion of Edge Building Products, Inc. ("Edge") for *nunc pro tunc* approval of a post-petition loan from its President, Terry L. Heller ("Heller"). For the reasons discussed below, the motion will be denied.

On July 5, 2005, Edge filed a "bare" petition for relief under Chapter 11. Edge filed none of the required schedules until September 14, 2005. On July 13, 2005, Edge filed a motion for leave to obtain post-petition financing pursuant to 11 U.S.C. § 364(c)(1) and (2). Edge also requested an expedited hearing on this motion, stating that it was "imperative" that the debtor be able to borrow funds "in order to maintain business operations pending a possible sale in the near future to a third party." The motion did not request a specific time frame for convening the hearing or state the specific purpose for which funds were needed (e.g. wages, debt service, raw materials, etc.). On July 15, 2005, an Order was entered granting the motion for expedited consideration and setting a hearing for July 25, 2005.

1

On July 13, 2005, prior to filing the within motion, Heller and Debtor's bankruptcy counsel, Lawrence G. Frank, Esquire ("Frank") discussed Heller's intention to make a loan to Debtor to enable it to continue operations. Frank advised Heller that the Court would first have to approve the loan and that a motion would have to be filed to obtain that approval. The next day, July 14, 2005, Heller advanced $70,000.00 to Edge pursuant to a resolution of its Board of Directors authorizing the receipt of the loan. The resolution further provided that the interest rate on the loan would be 8%.[1] The loan was to be secured by a first lien on the accounts receivable that would be generated by the loan.

On July 21, 2005, First National Bank of Newport ("FNBN") filed an objection to the motion for approval of post-petition financing, and a hearing was held on July 25, 2005. At the hearing, Debtor's counsel informed the Court that Heller had already advanced the funds prior to obtaining approval from the Court. Ultimately, the parties agreed to continue the hearing to allow Debtor to file a motion to request approval of the loan *nunc pro tunc.* On July 27, 2005, an amended motion requesting approval of the loan was filed. The motion sought approval of the financing on a "superpriority" basis and requested approval to grant Heller a security interest in receivables. The United States Trustee ("UST") objected to the motion, as did FNBN. On September 12, 2005, a stipulation resolving FNBN's objection was approved by the Court. The matter remaining to be decided is the objection of the UST, which was heard by the

---

[1] Since neither the corporate resolution nor any security instruments were offered into evidence, no other terms of the loan are of record.

2

Court on August 8, 2005. The parties have filed briefs on the objection, and the matter is ready for decision.[2]

## Discussion

The substantive requirements of the Bankruptcy Code for a debtor to obtain post-petition financing are set forth at 11 U.S.C. § 364. Federal Rule of Bankruptcy Procedure 4001(c) governs motions filed pursuant to Section 364. In pertinent part, Rule 4001(c) requires the filing of a motion, accompanied by a copy of the proposed financing agreement, and notice to parties in interest. Rule 4001(c)(2) provides that a hearing on the motion may not be held sooner than fifteen days after the motion is filed, but authorizes the Court to approve interim financing "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Under Section 364(c), if a debtor-in-possession[3] cannot obtain credit as an unsecured administrative expense, the court may grant the creditor a first priority administrative claim.

Generally, Section 364 and Rule 4001 preclude a debtor already awash in debt from incurring further debt unless his creditors first have notice and are heard. "[T]he Bankruptcy Code is quite clear that a debtor must seek court approval to obtain credit." *In re Lehigh Valley Professional Sports Clubs, Inc.,* 260 B.R. 745, 750 (Bankr.E.D.Pa. 2001). "One who extends credit to a debtor without court authorization therefore does so at its own risk . . . . Only a foolhardy lender will attempt to make [*nunc pro tunc* approval] serve as a substitute for proper

---

[2]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(D) and (O). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

[3]The actual language of Section 364(c) refers only to a trustee, but Section 1107 of the Code grants to a debtor in possession the powers of a trustee under several sections of the Code, including Section 364.

3

authorization. " *Lehigh Valley,* at 750 (fn. 10), citing *In re American Cooler Co.,* 125 F2d 496, 497 (2nd Cir. 1942). Since the granting of post-petition financing can result in circumvention of important notice requirements, "*nunc pro tunc* approval of . . . a §364 application is reserved for extraordinary circumstances in the Third Circuit." *In re City Wide Press, Inc.,* 102 B.R. 431, 436 (Bankr. E.D. Pa.1989), *aff'd,* 110 B.R. 710 (E.D.Pa.1990).

*American Cooler* sets forth three criteria to be applied in deciding whether to grant *nunc pro tunc* approval of a loan. First, the Court must be "confident that [it] would have authorized [the loan] if a timely application had been made." *American Cooler*, 125 F.2d at 497. Second, the Court must be "reasonably persuaded that the creditors have not been harmed by a continuation of the business made possible by the loan." *Id.* Third, the Court "should also take into account, as bearing on the good faith of the debtor and lender, whether or not they honestly believed that they had authority to enter into the transaction." *Id. American Cooler* was decided under the Bankruptcy Act, which was "relatively unclear as to the procedural requirement for [post-petition] credit acquisitions...." *Lehigh Valley*, 260 B.R. at 751. "Because the [Bankruptcy Code's] iteration of the post-petition financing provision expressly imposes the prior authorization procedure, it has been viewed as requiring a higher threshold for *nunc pro tunc* approval." *Id.* Thus, in addition to the three *American Cooler* criteria, the Courts have also required that "there be something more compelling in the nature of equities and absence of prejudice to interested parties to allow such an extraordinary dispensation." *Lehigh Valley,* 260 B.R. at 751 (quoting *City Wide Press*, 102 B.R. at 436 (other citations omitted)).

Under the circumstances described above, the Court concludes that Debtor's case for *nunc pro tunc* approval of the loan falls short of the *American Cooler* standard. Under the first criterion, Debtor was required to show that it would have obtained approval had it made a timely application. In order to obtain prior approval of a credit transaction under Section 364(c)(1) or (2), the Debtor must show that it cannot obtain unsecured or "non-superpriority" credit under Section 364(a) or (b). *In re Midstate Raceway, Inc.,* 323 B.R. 40, 58 (Bankr. N.D. N.Y. 2005) (citing, *In re Ames Department Stores*, 115 B.R. 34 (Bankr. S.D. N.Y. 1990). As the UST's brief points out, the mere fact that Heller made the loan without knowing whether or not it would be granted either secured or "superpriority" status shows that Debtor could have obtained the loan from him on an unsecured, "non-superpriority" basis. As to the second criterion, there was little evidence introduced from which the Court could deduce that creditors have not been harmed. However, even if the Court were to determine that Debtor met its burden as to the second criterion, it is clear Debtor fails to meet the third. Frank specifically advised Heller that the loan required prior court approval. Therefore, neither Debtor nor Heller could have "honestly believe[d] they had the authority to enter into the loan transaction" at the time it occurred. Their apparent belief that such authority might *later* be granted is not the equivalent of their honest belief that they had authorization at the time the loan was made.

Debtor's brief asserts that its lack of funds with which to purchase raw materials provide the "extraordinary circumstances" necessary to permit the entry of a *nunc pro tunc* order. However, in its motion for expedited hearing Debtor did not allege that such circumstances existed. Clearly, such circumstance would have provided a basis for either a hearing to have been set for the same date on which the motion was filed or for the entry of an order approving

5

interim financing. However, without such an allegation in a motion filed when Debtor's finances were allegedly so dire, the testimony that without the loan at issue the company would have been forced out of business rings hollow.

Accordingly, the Court concludes that Debtor's amended motion for *nunc pro tunc* approval of post-petition financing must be denied.[4] An appropriate order will be entered.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: December 30, 2005

*This electronic opinion is signed and filed on the same date.*

---

[4]The UST's brief goes on to assert that the funds at issue should be declared to have been a capital contribution and not a loan. The Court declines to make such a finding on the record before it. Heller may seek payment as a administrative claim. Absent such a claim and an objection thereto, there exists no controversy for adjudication by the Court. Similarly, should a provision for repayment of the funds be included in Debtor's plan of reorganization, the matter will be decided through the confirmation process.